The RADIOLOGY INSTITUTE,
INC., et al., Plaintiffs,

v.

Francisco A. PADILLA RODRIGUEZ,
et al., Defendants.

Civ. No. 93–1208(PG).

United States District Court,
D. Puerto Rico.

March 15, 1993.

Carlos S. Látimer, San Juan, PR, for plaintiffs.

Eric Pérez Ochoa, Hato Rey, PR, Viviana Rodríguez Ortiz, Dept. of Justice, Com. of P.R., San Juan, PR, for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

Plaintiffs filed the present action for injunctive relief grounded on 42 U.S.C. § 1983, alleging that co-defendant Judge Padilla Rodriguez, acting in his official capacity and under color of the laws of Puerto Rico, deprived them of their federally protected property rights. Plaintiffs further contend that co-defendant Philips Credit Corporation ("PCC") was a private person acting under the authority of the superior court's order. The federally protected right asserted by plaintiffs is the deprivation of property without due process. Together with their petition for injunctive relief plaintiffs filed a motion requesting a temporary restraining order pursuant to Fed.R.Civ.P. 65. On February 9, 1993, the Court issued an order temporarily restraining defendants from executing or enforcing the writ of attachment issued in the state court proceedings. The parties stipulated on February 18, 1993, that the temporary restraining order be extended until March 4, 1993. A hearing was held on March 3, 1993, on co-defendant PCC's motion to dismiss and plaintiffs' opposition thereto.

### Background

On May 1, 1992, plaintiffs initiated an action in the federal district court against North American Philips Corporation, Philips Medical Systems North America, Inc., and defendant in this case, Philips Credit Corporation, for breach of contract, fraud and violation of credit statutes.[1] A few days later PCC filed suit in the Superior Court of Puerto Rico, San Juan Part, against plaintiffs in this case, *Philips Credit Corporation, et al v. The Radiology Institute, Inc., et al,* Civil No. KCD 92–272, for collection of monies and foreclosure of guaranties to recover approximately $7.4 million in allegedly defaulted obligations under five separate loan agreements, executed between PCC and the Ra-

1. This case, Civil No. 92–1568, was assigned to Chief Judge Gilberto Gierbolini.

478

diology Institute.[2] PCC requested an *ex-parte* order of attachment pursuant to Puerto Rico Rule of Civil Procedure 56 to secure the effectiveness of a potential judgment. Copies of the loan agreements executed before a notary public were submitted to the Superior Court Judge Evelyn Hernández de Mártir, who on May 12, 1992, issued the attachment order. Subsequently, plaintiffs herein filed a motion in the Superior Court to set aside the attachment order, wherein they raised the issue that they were deprived of their property without due process of law because they were not afforded an opportunity to be heard before the issuance of the *ex-parte* order, as required by *Connecticut v. Doehr,* —— U.S. ——, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991). The superior court judge set aside the attachment order and a hearing was held on June 5, 1992, to discuss the applicability of the *Doehr* decision to the issues at bar.

On June 27, 1992, the judge issued a resolution. She made an analysis of the factors established in *Doehr* in order to determine whether Rules 56.3 and 56.4 of the Puerto Rico Rules of Civil Procedure complied with the due process protections under the United States and Puerto Rico Constitutions. She concluded that Rule 56 contained sufficient constitutional guarantees to conform with due process requirements under the doctrine enunciated in *Doehr.* She reinstated in full force and effect the attachment order granted on May 12, 1992.

On July 21, 1992, plaintiffs herein filed a writ of *certiorari* before the Supreme Court of Puerto Rico requesting that the resolution of June 27, 1992, be set aside. They raised the same arguments previously presented to the lower court. The Supreme Court of Puerto Rico issued a resolution, *Philips Credit Corporation v. The Radiology Institute, Inc., et al,* LE–92–424, ordering PCC to show cause why the June 27 resolution should not be revoked and the case sent back to the lower court for the holding of a hear-

ing and also instructed PCC to brief the court as to the applicability of *Doehr* to the facts of the case. After PCC filed its memorandum of law in opposition to the writ of *certiorari* and plaintiffs herein replied, the Supreme Court ordered plaintiffs to discuss (a) whether the June 5, 1992, hearing afforded plaintiffs with the due process guaranties of the Puerto Rico and the United States Constitutions, and (b) whether the hearing complied with the doctrine enunciated in *Doehr.*

On November 20, 1992, the Supreme Court entered a resolution denying the writ of *certiorari.* Plaintiffs herein moved for a reconsideration, which was denied.

*Discussion*

Co-defendant PCC has filed a motion to dismiss raising several grounds in support of dismissal.[3] The first of these grounds is that this Court should abstain under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), from intervening in the ongoing state court proceedings. The second ground raised is that this Court lacks subject matter jurisdiction over the case under the *Rooker–Feldman* doctrine, which provides that federal district courts have no authority to review the final judgments of a state court. In the alternative, PCC contends that plaintiffs are collaterally estopped from seeking relief in federal court on issues already entertained and adjudicated by the state courts.

As a preliminary matter, we must address the threshold question of whether federal jurisdiction exists that would permit this Court to rule on plaintiffs' constitutional claims. If such jurisdiction exists, then we must address the issue of whether this Court should, in the interests of comity and federalism, abstain from exercising that jurisdiction in order to permit the Puerto Rico courts to rule on those claims.

■ The federal district court is without authority to review final determinations of a

2. The individual shareholders of the Radiology Institute and their conjugal partnership were also sued in their personal capacity as guarantors of the obligations under the loan agreements.

3. Co-defendant Judge Padilla Rodriguez also filed a motion to dismiss but in view of our disposition of PCC's dismissal motion will not be considered.

state court in judicial proceedings.[4] *Lancellati v. Fay*, 909 F.2d 15 (1st Cir.1990), *citing, District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983); *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 296, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923). 28 U.S.C. § 1257 provides that the proper court in which to obtain such review is the United States Supreme Court. *Worldwide Church of God v. McNair*, 805 F.2d 888 (9th Cir.1986).

■ Plaintiffs herein argue that the *Rooker–Feldman* doctrine does not apply to collateral federal attacks on state decisions that have not attained appellate finality.[5]

A similar argument was raised in *Port Auth. PBA v. Port Auth. of N.Y. & N.J.*, wherein the court answered "[I]f federal district courts are precluded, as they are, from reviewing the decisions of a state's highest court, even when those decisions appear to the district court to have been plainly in violation of the Constitution, then federal district courts are certainly also precluded from reviewing decisions of lower state courts, which are subject to correction and modification within the state court system." 973 F.2d 169, 177 (3rd Cir.1992).

The Third Circuit states that most court of appeals that have considered the issue have held that the *Rooker–Feldman* doctrine applies with equal force when litigants seek federal review of the orders of lower state courts. *See, e.g., Keene Corp. v. Cass*, 908 F.2d 293, 297 (8th Cir.1990) (Keene Corp. had challenged the constitutionality of a state trial court's discovery order on a pending state trial; the court held: where a litigant attempts to circumvent the requirement of seeking direct review in the United States Supreme Court by casting her lawsuit as a section 1983 action, *Feldman's* jurisdictional bar applies); *Worldwide Church of God v. McNair*, 805 F.2d at 893 n. 3 (Worldwide brought a federal action challenging the constitutionality of a state court jury verdict; the court noted its agreement with other circuits which had held "that the *Feldman* doctrine should apply to state judgment even though state court appeals are not final"); *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986) (Dr. Hale sought to challenge a state court divorce decree which was also the subject of an appeal which was pending within the state court system; the court stated: "We hold no warrant to review even final judgment of state courts, let alone those which may never take final effect because they remain subject to revision in the state appellate system.").

This Court agrees with the Third Circuit and court decisions cited therein that the *Rooker–Feldman* doctrine precludes federal review of lower state court decisions, just as it precludes review of the decisions of the state's highest court. *Port Auth. PBA v. Port Auth. of N.Y. & N.J.*, 973 F.2d at 178.

■ Plaintiffs herein want this Court to sit in direct review of the Puerto Rico Superior Court's resolution which upheld the attachment order of May 12, 1992, because it com-

**4.** There is an exception to this general rule: "[a] federal court 'may entertain a collateral attack on a state court judgment which is alleged to have been procured through fraud, deception, accident, or mistake . . .,' *Resolute Insurance Co. v. State of North Carolina*, 397 F.2d 586, 589 (4th Cir.1968)." *Automobile Club of Mich. v. Stacey*, 750 F.Supp. 259, 263 (E.D.Mich.1990), *citing, In re Sun Valley Foods Co.*, 801 F.2d 186, 189 (6th Cir.1986). Plaintiffs have not alleged nor has evidence been presented of frauds, deception, accident or mistake in the procuring of the state court resolution.

**5.** Philips contends that once the Supreme Court of Puerto Rico declined to review the superior court's decision, the decision of the lower court became final. Because we decide that the *Rooker–Feldman* doctrine does apply to state decisions that have not yet attained appellate finality, we need not decide whether the superior court's resolution, once the Supreme Court of Puerto Rico declined to grant *certiorari*, became *ipso facto* the judgment of the highest court in which a decision could be had under the rule, giving United States Supreme Court jurisdiction to review final judgments rendered by the highest court of a state in which a decision may be had. Nor we need to decide whether the denial of the writ by the Supreme Court could be interpreted as a decision on the merits affirming the superior court's judgment and exhibiting sufficient finality to support a writ of *certiorari* from the Supreme Court of the United States pursuant to 28 U.S.C. § 1258.

plied with the procedural due process requirements enunciated in *Doehr*. This would require the Court to evaluate the merits of the state court's decision. There is no reason to believe that Congress intended section 1983 to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all. *Allen v. McCurry*, 449 U.S. 90, 104, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Congress' intention that section 1983 "throw open the doors of the United States Courts," *Patsy v. Florida Board of Regents*, 457 U.S. 496, 504, 102 S.Ct. 2557, 2561, 73 L.Ed.2d 172 (1982), to individuals who were threatened with, or who had suffered, the deprivation of constitutional rights does not hold true for the party who is a defendant in state proceedings alleging that the state proceedings are in violation of his federal rights. *Ivy Club v. Edwards*, 943 F.2d 270, 280 (3rd Cir.1991). As the Third Circuit stated:

> Unless the formidable barrier of the *Younger* abstention doctrine can be surmounted by a defendant in a state proceeding or removal is available under the Civil Rights Removal Act,[6] that defendant must have his federal rights adjudicated by the state court system subject to review only by the Supreme Court of the United States.

*Id.* at 280. *See also Casa Marie, Inc. v. Superior Court of Puerto Rico, District of Arecibo*, 988 F.2d 252, 262 n. 10 (1st Cir. 1993) ("Younger abstention forces the parties to a state court proceeding to litigate federal claims and defenses through the state court system, with discretionary appellate review by the United States Supreme Court as a last resort.").

Plaintiffs herein litigated their federal claims and defenses in the state court proceedings. They had their federal rights adjudicated therein subject to review only by the Supreme Court of the United States.[7] *See, e.g., Automobile Club of Mich. v. Stacey, supra.*

WHEREFORE, in view of the above findings and conclusions, the Court hereby **GRANTS** PCC's motion to dismiss and **FURTHER ORDERS** the **DISMISSAL** of the complaint for lack of jurisdiction. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

---

6. The Civil Rights Removal Act, 28 U.S.C. § 1443, provides for the removal only under limited circumstances not applicable herein.

7. Due to the Court's disposition of the case based on our lack of jurisdiction, we need not decide whether *Younger* abstention is appropriate under the facts of this case nor we need to entertain the collateral estoppel argument.